Sealed
Public and unofficial staff access to this instrument are prohibited by court order.

United States District Court
Southern District of Texas
FILED

JAN 2 2 2014

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. |
| § | |
| § | **14 CR 040** |
| WILLIAM OWUAMA, § | |
| MARLA OWUAMA, § | |
| and § | UNDER SEAL |
| FLORIDA HOLIDAY ISLAND § | |

**INDICTMENT**

THE GRAND JURY CHARGES:

**COUNT ONE**
(Conspiracy – 18 U.S.C. §371)
**A. Introduction**

At all times material to this Indictment:

**The Medicare Program**

1.  The Medicare Program ("Medicare") was a federally funded health insurance program that provided health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS) an agency of the United States Department of Health and Human Services ("HHS"), formerly known as the Health Care Financing Administration ("HCFA"). Individuals who received benefits under Medicare were often referred to as Medicare "beneficiaries".

2.  Medicare was a "health care benefit program" as defined by Title 18, United States Code,

1

Section 24(b).

3. Medicare Part B helped pay for certain physician services, outpatient services and other services.

4. HHS through CMS, contracted with TrailBlazer Health Enterprises, LLC located in Dallas, Texas to process claims submitted by physicians and other health care providers.

## The Medicaid Program

5. The Medicaid program was a state-administered health insurance program funded predominantly by the United States Government and administered by the State of Texas. The Medicaid program helped pay for reasonable and necessary medical procedures and services provided to individuals who are deemed eligible under state low-income programs. The Texas Medicaid Program was a cooperative federal-state program to furnish medical assistance to the indigent. The State of Texas contracted with the Texas Medicaid Health Partnership (TMHP) to process and pay claims submitted by health care providers.

6. Upon assignment of a Medicaid provider number to a health care provider, the current Texas Medicaid Provider Procedures manuals were distributed to the provider. Subsequent to that, TMHP mailed to the provider all Texas Medicaid Bulletins, including updates to the procedure manual distributed by TMHP. The procedure manual, bulletins and updates contain the rules and regulations pertaining to services covered by Medicaid and how to appropriately bill for providing these services to recipients.

7. The Medicaid Program in Texas may pay a portion of a claim originally submitted to Medicare in the event the patient has both Medicare and Medicaid coverage. This portion

was generally twenty percent of the Medicare allowance for the billed charge. Medicaid will pay its portion if Medicare originally allowed the claim. If a Medicaid recipient was not also a Medicare beneficiary, the claims may have been submitted directly to Medicaid. The guidelines regarding payment of these claims were contained in the Provider Procedures manual given to providers upon enrollment in the Medicaid Program and were similar to Medicare guidelines.

8. Medicaid was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

## The Parties

9. WILLIAM OWUAMA, defendant herein, was the only listed director of Wilmar Healthcare Systems. Wilmar was incorporated with the Texas Secretary of State on March 5, 1999. WILLIAM OWUAMA also opened and controlled the bank accounts for Wilmar Healthcare Systems as the sole signer on the accounts. WILLIAM OWUAMA filed an application for a Medicare provider number in 2001. In that application, he was listed as the sole owner of the company.

10. MARLA OWUAMA was the spouse of William Owuama. She was a registered nurse with the State of Texas. MARLA OWUAMA was at Wilmar and conducted the purported diagnostic testing on the beneficiaries on the occasions when tests were actually performed. She was also the person responsible for training the new employees on how to do the tests and run the office. MARLA OWUAMA was also the owner of Vintage Healthcare Systems. She was the sole signer on the bank accounts for Vintage Healthcare

Systems and the registered agent on documents filed with the Secretary of State.

11. FLORIDA HOLIDAY ISLAND was a marketer who transported beneficiaries to Wilmar for a fee on a per patient basis. She was also responsible for paying the beneficiaries for going to Wilmar for the diagnostic testing/balance therapy.

12. S.B. is a physician registered with the Texas Medical Board as a general practitioner. S.B. owned and operated a medical practice named Magnolia First Family Medicine in Houston, Tx. S.B. would refer patients to Wilmar for balance therapy. S.B. reassigned her benefits to Wilmar so that WILLIAM OWUAMA could bill Medicare and Medicaid using her provider number.

13. S.M. was a physician registered with the Texas Medical Board. S.M. reassigned his benefits to Wilmar so that WILLIAM OWUAMA could bill Medicare and Medicaid using his provider number. S.M. was ordered to begin serving a 46 month term in Federal prison for income tax evasion beginning on October 23, 2006.

### B. The Conspiracy

14. Beginning in or about January 1, 2006, the exact time being unknown to the grand jury, and continuing thereafter to in or about October 2009, in the Houston Division of the Southern District of Texas and elsewhere, defendants,

**WILLIAM OWUAMA**

**MARLA OWUAMA**

and

**FLORIDA HOLIDAY ISLAND**

did knowingly, intentionally, and willfully combine, conspire, confederate and agree with each other and other persons known and unknown to the grand jury to commit and aid and abet certain offenses against the United States:

a. To violate the Health Care Fraud statute, that is, to knowingly and willfully execute and attempt to execute, a scheme and artifice: (1) to defraud a health care benefit program; namely the Medicare/Medicaid programs; and (2) to obtain, by promises, money and property owned by, or under the custody and control of, a health care benefit program, namely, the Medicare/Medicaid programs; in connection with the delivery of and payment for health care benefits, items and services, namely certain physician services in violation of Title 18, United States Code Section 1347; and,

b. To violate the Anti-Kickback statute, that is, to knowingly and willfully offer or pay any remuneration, directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person – to purchase, lease, order or arrange for or recommend purchasing, leasing, or ordering any good, facility, service or item for which payment may be made in whole or in part under a Federal health care program in violation of Title 42 United States Code Section 1320a-7b(b)(2)(B)

### C. Purpose of the Conspiracy

15. It was a purpose of the conspiracy that the defendants and others known and unknown to the Grand Jury unlawfully enriched themselves by falsely and fraudulently representing to Medicare and Medicaid that various types of vestibular testing were being performed on Medicare and Medicaid beneficiaries when the defendants knew that many of the tests

were never performed at all and that the beneficiaries only visited Wilmar Healthcare Systems on such a frequent basis not out of medical necessity, but because they were being paid for their visits.

### D. Manner and Means

It was a part of the conspiracy that:

16. Defendant, FLORIDA HOLIDAY ISLAND, would and did transport Medicare and Medicaid beneficiaries to Wilmar Healthcare Systems.

17. Defendants, WILLIAM OWUAMA and MARLA OWUAMA, would and did pay FLORIDA HOLIDAY ISLAND on a per patient basis for transporting Medicare and Medicaid beneficiaries to Wilmar Healthcare Systems.

18. Defendant FLORIDA HOLIDAY ISLAND would and did pay Medicare and Medicaid beneficiaries on a per visit basis for coming to Wilmar Healthcare Systems and signing the sign-in sheet.

19. S.M., a licensed physician with a Medicare provider number, reassigned his Medicare benefits to Wilmar Healthcare Systems.

20. S.M. was ordered to begin serving a 46 month term in Federal prison for income tax evasion on October 23, 2006.

21. S.B., a licensed physician with a Medicare provider number, reassigned her benefits to Wilmar Healthcare Systems.

22. Defendants, WILLIAM OWUAMA and MARLA OWUAMA, would and did administer and oversee the billing of vestibular testing that was never performed under the provider

numbers of S.M. and S.B. from on or about January 2006 through in or about October 2009.

23. Defendants, WILLIAM OWUAMA, MARLA OWUAMA and FLORIDA HOLIDAY ISLAND would and did cause Medicare and Medicaid to pay more than $4 million based on the thousands of fraudulent claims that the defendants caused to be submitted from January 2006 through October 2009.

### E. Overt Acts

24. In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Southern District of Texas,

   a. On or about July 5, 2007, defendants WILLIAM OWUAMA and MARLA OWUAMA caused claim number 452207186736530 in the amount of $240.00 to be filed with Medicare for services allegedly rendered to D.C. on June 29, 2007.

   b. On or about July 6, 2009, defendants WILLIAM OWUAMA and MARLA OWUAMA caused claim number 452209187087160 in the amount of $100.00 to be filed with Medicare for services allegedly rendered to D.C on July 3, 2009.

   c. In on or about January 2006 and continuing thereafter to in or about October 2009, defendants WILLIAM OWUAMA, MARLA OWUAMA and FLORIDA HOLIDAY ISLAND, caused cash money to be paid to D.C. in exchange for visiting Wilmar Healthcare Systems so that they could bill Medicare and Medicaid in reference to his beneficiary number.

   d. On or about July 5, 2007, defendants WILLIAM OWUAMA and MARLA OWUAMA

7

    caused claim number 4522207186736700 in the amount of $240.00 to be filed with Medicare for services allegedly rendered to J.M. on June 29, 2007.

e. On or about July 6, 2009, defendants WILLIAM OWUAMA and MARLA OWUAMA caused claim number 4522209187087550 in the amount of $100.00 to be filed with Medicare for services allegedly rendered to J.M. on July 1, 2009.

f. In on or about January 2006 and continuing thereafter to in or about October 2009, defendants WILLIAM OWUAMA, MARLA OWUAMA and FLORIDA HOLIDAY ISLAND, caused cash money to be paid to J.M. in exchange for visiting Wilmar Healthcare Systems so that they could bill Medicare and Medicaid in reference to his beneficiary number.

g. On or about July 5, 2007, defendants WILLIAM OWUAMA and MARLA OWUAMA caused claim number 4522207186736760 in the amount of $240.00 to be filed with Medicare for services allegedly rendered to A.R. on June 27, 2007.

h. On or about July 6, 2009, defendants WILLIAM OWUAMA and MARLA OWUAMA caused claim number 4522209187087660 in the amount of $100.00 to be filed with Medicare for services allegedly rendered to A.R. on July 3, 2009.

i. In on or about January 2006 and continuing thereafter to in or about October 2009, defendants WILLIAM OWUAMA, MARLA OWUAMA and FLORIDA HOLIDAY ISLAND, caused cash money to be paid to A.R. in exchange for visiting Wilmar Healthcare Systems so that they could bill Medicare and Medicaid in reference to his beneficiary number.

j.  On or about July 5, 2007, defendants WILLIAM OWUAMA and MARLA OWUAMA caused claim number 4522071867368000 in the amount of $240.00 to be filed with Medicare for services allegedly rendered to D.S. on June 29, 2007.

k.  On or about July 6, 2009, defendants WILLIAM OWUAMA and MARLA OWUAMA caused claim number 4522091870877000 in the amount of $100.00 to be filed with Medicare for services allegedly rendered to D.S. on July 2, 2009.

l.  In on or about January 2006 and continuing thereafter to in or about October 2009, defendants WILLIAM OWUAMA, MARLA OWUAMA and FLORIDA HOLIDAY ISLAND, caused cash money to be paid to D.S. in exchange for visiting Wilmar Healthcare Systems so that they could bill Medicare and Medicaid in reference to her beneficiary number.

m.  On or about July 5, 2007, defendants WILLIAM OWUAMA and MARLA OWUAMA caused claim number 4522071867368200 in the amount of $240.00 to be filed with Medicare for services allegedly rendered to M.T. on June 28, 2007.

n.  On or about July 6, 2009, defendants WILLIAM OWUAMA and MARLA OWUAMA caused claim number 4522091870877300 in the amount of $100.00 to be filed with Medicare for services allegedly rendered to M.T. on July 2, 2009.

o.  In on or about January 2006 and continuing thereafter to in or about October 2009, defendants WILLIAM OWUAMA, MARLA OWUAMA and FLORIDA HOLIDAY ISLAND, caused cash money to be paid to M.T. in exchange for visiting Wilmar Healthcare Systems so that they could bill Medicare and Medicaid in reference to her

     beneficiary number.

p. On or about June 29, 2009, defendants WILLIAM OWUAMA and MARLA OWUAMA caused claim number 452209180036470 in the amount of $100.00 to be filed with Medicare for services allegedly rendered to P.W. on June 26, 2009.

q. On or about July 6, 2009, defendants WILLIAM OWUAMA and MARLA OWUAMA caused claim number 452209187087930 in the amount of $100.00 to be filed with Medicare for services allegedly rendered to P.W. on July 3, 2009.

r. In on or about January 2006 and continuing thereafter to in or about October 2009, defendants WILLIAM OWUAMA, MARLA OWUAMA and FLORIDA HOLIDAY ISLAND, caused cash money to be paid to P.W. in exchange for visiting Wilmar Healthcare Systems so that they could bill Medicare and Medicaid in reference to her beneficiary number.

## COUNTS TWO through EIGHT
### (Health Care Fraud, Title 18 U.S.C. §§ 1347 and 2)

### A. Introduction

At all times material to this Indictment:

1. Paragraphs 1 through 13 of Section A of Count One are realleged and incorporated as though fully set forth herein.

2. Beginning in or about January 2006, and continuing through in or about October 2009, defendants WILLIAM OWUAMA and MARLA OWUAMA caused to be billed, and

aided and abetted the billing of, Medicare and Medicaid, for medical procedures which were not performed. As a result of this unlawful scheme, Medicare and Medicaid paid out in excess of $4 million based on the false and fraudulent claims.

### B. Purpose of the Scheme to Defraud

3. It was a purpose of the scheme to defraud that the defendants and others, known and unknown to the Grand Jury unlawfully enriched themselves by falsely and fraudulently representing to Medicare and Medicaid that various types of vestibular testing were being administered routinely to Medicare and Medicaid beneficiaries when in fact the defendants well knew that the various types of vestibular testing were not being performed on a regular basis by a licensed physician and in many cases were not being performed at all.

### C. Manner and Means

4. Paragraphs 16 through 23 of Section D of Count One of this Indictment are realleged and incorporated as though fully set forth herein.

### D. Health Care Fraud

5. Beginning in or about January 2006, and continuing thereafter to in or about October 2009, in the Houston Division of the Southern District of Texas, the defendants

**WILLIAM OWUAMA**

And

**MARLA OWUAMA**

aided and abetted by each other and others known and unknown to the grand jury, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a

11

health care benefit program, and to obtain by means of material, false and fraudulent pretenses, representations, and promises, any of the money and property owned by, and under the custody and control of, a health care benefit program in connection with the delivery of a payment for health care benefits, items, and services, to wit; on or about the below listed dates, the defendants caused to be submitted false and fraudulent claims to Medicare and Medicaid for vestibular testing that was not performed:

| Count | Health Care Benefits Provider | Medicare/Medicaid Beneficiary | Date of Claim | Claim Number | Amount Billed | False Claim |
|---|---|---|---|---|---|---|
| 2 | Medicare | D.C. | 7.6.2009 | 452209187087160 | $100.00 | Services Not Performed |
| 3 | Medicare | J.M. | 7.6.2009 | 452209187087550 | $100.00 | Services Not Performed |
| 4 | Medicare | A.R. | 7.6.2009 | 452209187087660 | $100.00 | Services Not Performed |
| 5 | Medicare | D.S. | 7.6.2009 | 452209187087700 | $100.00 | Services Not Performed |
| 6 | Medicare | M.T. | 7.6.2009 | 452209187087732 | $100.00 | Services Not Performed |
| 7 | Medicare | P.W. | 7.6.2009 | 452209187087932 | $100.00 | Services Not Performed |
| 8 | Medicaid | P.W. | 3.3.2009 | 200906206729337 | $100.00 | Services Not Performed |

All in violation of Title 18 United States Code, Sections 1347 and 2.

## NOTICE OF CRIMINAL FORFEITURE
28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C)

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to the defendants,

**WILLIAM OWUAMA,**

**MARLA OWUAMA**

And

**FLORIDA HOLIDAY ISLAND**

that in the event of conviction of the offenses charged in Counts One through Eight of this Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

### Money Judgment

Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the defendants may be jointly and severally liable. That amount is estimated to be, but is not limited to, approximately $4,769,815.65 in United States dollars.

### Substitute Assets

Defendants are notified that in the event that property subject to forfeiture, as a result of

any act or omission of defendants,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendants up to the total value of such property pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 28, United States Code, Section 2461(c).

A TRUE BILL

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

ANDREW LEUCHTMANN
ASSISTANT UNITED STATES ATTORNEY